**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| REGINA LYNN BRAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-cv-01758-SRC |
| | ) | |
| CITY OF WENTZVILLE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on review of plaintiff Regina Lynn Brand's amended complaint pursuant to 28 U.S.C. § 1915. For the reasons discussed below, the Court will direct the Clerk of Court to issue process on defendants City of Wentzville, Sean Rosner, and Kurt Frisz.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating

that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

## Background

On December 10, 2020, plaintiff filed a pro se civil complaint with the Court. (Docket No. 1). The complaint named the Wentzville Police Department, Chief Kurt Frisz, Detective Sean Rosner, Sergeant David Schoolcraft, and Detective Craig Schulte as defendants. With regard to jurisdiction, plaintiff asserted that the Court had federal question jurisdiction pursuant to five separate bases: (1) 18 U.S.C. § 242;[1] (2) RSMo § 213.010;[2] (3) "gender bias in [a] sexual assault investigation – civil rights violation"; (4) "equal protection of the law"; and (5) RSMo § 575.080.[3] (Docket No. 1 at 4).

Plaintiff's claims arose from a sexual assault investigation undertaken by members of the Wentzville Police Department. (Docket No. 1 at 6). Plaintiff alleged that the sexual assault occurred on August 18, 2015, in Wentzville, Missouri.

According to plaintiff, Chief Frisz "failed to properly train his staff to prevent gender and racial bias," or have them participate in "victim center[ed] and trauma informed training for victims of sexual offenses." Plaintiff suggested that adequate training would have allowed Chief Frisz's staff "to properly investigate [her] complaint."

With regard to Detective Rosner, plaintiff presented several allegations. First, she stated that Detective Rosner "secretly audio taped [her] S.A.N.E. exam[4] at the hospital." Second, plaintiff asserted that Detective Rosner "failed to properly investigate." Third, she alleged that Detective

---

[1] 18 U.S.C. § 242 is a criminal statute titled: "Deprivation of rights under color of law."
[2] RSMo § 213.010 is a Missouri statute providing the definitions for Chapter 213, Human Rights.
[3] RSMo § 575.080 is a Missouri criminal statute providing the elements and penalty for false reports.
[4] S.A.N.E. refers to Sexual Assault Nurse Examiner. *See, e.g., Hernandez v. Schuetzle*, 2009 WL 395781, at *26 (D. N.D. 2009).

Rosner "stereotyped [her] and used stereotypical comments during questioning." Fourth, plaintiff contended that Detective Rosner "abused his power by [threatening] and intimidating [her] with prosecution if [she] did not drop the restraining order against [her] attacker." Finally, plaintiff claimed that Detective Rosner "intentionally falsified documents that empowered [her] attacker to assault [her] on" November 12, 2015. She stated that this made Detective Rosner "an accessory before the fact."

As to Sergeant Schoolcraft and Detective Schulte, plaintiff stated that they both demonstrated "implicit bias towards [her] and [her] situation," which caused them to "botch the investigation." In particular, she alleged that they did not forward her case to the prosecutor, resulting in a second attack that left her "[permanently] disabled and unable to work, and allowed [her] attacker to falsely claim [she] was lying about the attack."

Plaintiff asserted that she has suffered "ongoing mental and physical trauma, [anxiety] and depression," and sought $1.24 million in total damages.

Along with her complaint, plaintiff filed a motion for leave to proceed in forma pauperis, which the Court granted. (Docket No. 2). Because plaintiff was proceeding in forma pauperis, the Court reviewed her complaint pursuant to 28 U.S.C. § 1915. Based on that review, the Court determined that plaintiff's complaint was subject to dismissal. (Docket No. 4).

Construing the complaint as arising under 42 U.S.C. § 1983, the Court first noted that plaintiff's action appeared barred by the statute of limitations. Specifically, the Court explained that § 1983 claims were governed by Missouri's five-year statute of limitations for personal injury actions. *See Walker v. Barrett*, 650 F.3d 1198, 1205 (8th Cir. 2011) (explaining "that § 1983 claims accruing within a particular state should be governed by that state's statute of limitations governing personal-injury claims"); and *Sulik v. Taney Cty., Mo.*, 393 F.3d 765, 767 (8th Cir. 2005) (noting

that for cases arising in Missouri, the five-year statute of limitations for personal injury actions found in RSMo § 516.120(4) applies to § 1983 actions).

In this case, plaintiff claimed she was sexually assaulted on August 18, 2015. She mentioned a "second [attack]" on November 12, 2015. At some point between those two dates, the allegedly flawed investigation took place. Assuming that plaintiff was damaged by this investigation, such damage would have become capable of being known on November 12, 2015, when the actions of the defendants purportedly allowed a second assault. Five years from November 12, 2015 is November 16, 2020. However, plaintiff did not file the instant action until December 8, 2020, twenty-two days after the statute of limitations expired.

With regard to the Wentzville Police Department, the Court noted that a police department is not a distinctly suable entity under 42 U.S.C. § 1983. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (affirming dismissal of West Memphis Police Department and West Memphis Paramedic Services because they were "not juridical entities suable as such"). Meanwhile, plaintiff had not stated a claim against the City of Wentzville itself, because her facts did not support the proposition that her rights were violated due to a Wentzville policy, custom, or failure to train. *See Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

As to the claims against Chief Frisz, Sergeant Schoolcraft, Detective Schulte, and Detective Rosner, the Court observed that plaintiff had not indicated the capacity in which they were sued. As such, it was assumed that these defendants were sued in their official capacities only. *See Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007) (explaining that when a plaintiff's complaint is silent as to capacity, the complaint is interpreted as including only official capacity claims). The official

capacity claims were treated as claims against the City of Wentzville, which employed the individual defendants. *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (stating that in an official capacity claim against an individual, the claim is actually "against the governmental entity itself"). As plaintiff had not stated a municipal liability claim against the City of Wentzville, this claim was subject to dismissal.

Even if Chief Frisz, Sergeant Schoolcraft, Detective Schulte, and Detective Rosner had been treated as being sued in their individual capacities, the Court determined that plaintiff had failed to state a claim. As to Chief Frisz, the Court noted that plaintiff had not presented facts demonstrating that Frisz directly participated in a constitutional violation or failed to train or supervise the offending actors. *See Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). With regard to Sergeant Schoolcraft and Detective Schulte, the Court found plaintiff's allegations to be wholly conclusory, without any factual support. Likewise, the allegations against Detective Rosner were also conclusory, lacked factual support, and failed to articulate a constitutional violation.

Rather than dismissing outright, the Court directed plaintiff to file an amended complaint. On May 19, 2021, the Court appointed counsel for the limited purpose of providing legal advice and representation in the consideration, preparation, and submission of an amended complaint, or the determination not to file one. (Docket No. 6). Plaintiff was given until June 21, 2021 in which to respond.

Plaintiff filed an amended complaint on June 21, 2021. (Docket No. 8).

### The Amended Complaint

Plaintiff's first amended complaint is brought pursuant to 42 U.S.C. § 1983, and names the City of Wentzville, Detective Sean Rosner, and Chief of Police Kurt Frisz as defendants. Detective Rosner and Chief Frisz are sued in their individual capacities. (Docket No. 8 at 2).

According to plaintiff, she was raped in her home by man named Chivas Johnson on August 18, 2015. (Docket No. 8 at 1). Johnson is not a party to this action. After the assault, plaintiff dialed 911 and advised the dispatcher that she had been raped by Johnson. (Docket No. 8 at 2). Johnson was later detained by police, determined to have four active warrants, and transported to the Wentzville Police Department where he was booked and processed. (Docket No. 8 at 3). At that point, the investigation was transferred to the Detective Bureau.

Detective Rosner interviewed plaintiff at the Wentzville Police Department. Plaintiff advised Detective Rosner that she had been raped by Johnson in her home, and that she wished to press charges. Detective Rosner arranged for plaintiff to be examined by a Sexual Assault Nurse Examiner (SANE Nurse) and drove her to the hospital, where she was taken to a private room. Plaintiff's examination included sensitive questions regarding her sexual history and intimate relationships, a genital exam, and photographs of her body. (Docket No. 8 at 4). She signed a medical release consenting to law enforcement access to her records regarding the sexual assault.

Plaintiff alleges that Detective Rosner remained in the hospital room during the sexual assault examination. (Docket No. 8 at 3). According to plaintiff, Detective Rosner had a department-issued digital audio recorder in his possession, which he used to record the examination without plaintiff's knowledge. (Docket No. 8 at 4). Plaintiff alleges that Detective Rosner did not wear the recorder in a conspicuous manner; that he had the opportunity to tell plaintiff she was being recorded; and that he did not notify plaintiff that she was being recorded. (Docket No. 8 at 5). She further asserts that Detective Rosner downloaded the recording onto a DVD. (Docket No. 8 at 6).

On August 19, 2015, Johnson was served with an ex parte order of protection, for which plaintiff had petitioned. In the meantime, Detective Rosner allegedly reported that he could find

"no probable cause to charge Johnson with rape or any crimes." In part, Detective Rosner reasoned that no semen had been located, even though plaintiff had reported that there was semen at the scene on the floor by the bed. (Docket No. 8 at 7). Detective Rosner apparently reached his conclusion before receiving the results of the SANE exam. Nevertheless, Detective Rosner indicated that he would forward the case to the St. Charles County Prosecuting Attorney's Office for further review, though he never did.

Plaintiff alleges that the results of the SANE exam revealed DNA from Johnson and that Detective Rosner was required to supplement his report. However, in the supplemental report, Detective Rosner stated that the "evidence only shows that [plaintiff] and Johnson engaged in intercourse and is not to be considered evidence of rape." Plaintiff alleges that Detective Rosner was also derogatory and rude during the investigation, and shared private information from the SANE exam with Johnson.

Plaintiff asserts that when the investigation was over, Johnson called her from a private number to taunt her about being let go. Johnson allegedly informed plaintiff that he had been encouraged to press charges against her for filing a false police report.

Upon learning that Johnson had been released, plaintiff called Detective Rosner to inform him that she was upset. According to plaintiff, Detective Rosner claimed she was lying. (Docket No. 8 at 8). Furthermore, plaintiff states that Detective Rosner threatened to have her arrested for violation of a restraining order if she had any other contact with Johnson, even though it was Johnson who had initiated the contact. Unwilling to risk being arrested, plaintiff dropped her ex parte order against Johnson on the same day that Detective Rosner allegedly threatened her.

Plaintiff asserts that on November 12, 2015, she was again assaulted by Johnson, this time in Wellston, Missouri. She reported the assault to the Wellston police, who initially pursued an

investigation. However, plaintiff claims that the Wellston police dropped the investigation when Johnson showed them the results of Detective Rosner's first investigation. Plaintiff identified a witness to the second assault, but the witness was never interviewed or contacted. Johnson purportedly bragged that part of the reason the Wellston police dropped the investigation was because he was related to officers employed by the Wellston Police Department.

On November 16, 2015, plaintiff states that she picked up the police report regarding the initial sexual assault occurring on August 18, 2015. The police report indicated that the status of the case was "Exceptionally Cleared." Plaintiff asserts that a case is "Exceptionally Cleared" when there is probable cause to arrest a suspect, but there is some reason that law enforcement cannot do so, such as the suspect's death. (Docket No. 8 at 9). Plaintiff claims that none of the circumstances under which a case could be exceptionally cleared existed in her case.

After viewing the police report, plaintiff became upset with the handling of the investigation by Detective Rosner and the Wentzville Police Department. (Docket No. 8 at 10). She therefore filed a complaint with Sergeant Schoolcraft regarding Detective Rosner's handling of the investigation.

Plaintiff then contacted the Prosecuting Attorney's Office to inquire about the status of her case, which Detective Rosner had earlier indicated had been forwarded to them. She asserts that the Prosecuting Attorney's Office advised that it had never received the report, despite Detective Rosner's statement to the contrary. As such, plaintiff claims that Detective Rosner lied about the case and incorrectly labeled her case as "Exceptionally Cleared." Sometime between January 4, 2016 and April 7, 2016, the status of plaintiff's case changed from "Exceptionally Cleared" to "Warrant Refused."

As a result of Detective Rosner's inadequate investigation, the improper closure of her case, and the lack of an explanation about the status of her case, plaintiff asserts that she wasted time in which she could have prepared a civil complaint against Johnson. (Docket No. 8 at 11). In particular, while plaintiff was under the impression that her case was being investigated, forwarded, and reviewed by the Prosecuting Attorney's Office, Detective Rosner actually closed her case inappropriately without forwarding the matter for review. Additionally, plaintiff states that she was intimidated by Detective Rosner's threat to arrest her.

Aside from filing a complaint about Detective Rosner with Sergeant Schoolcraft, plaintiff also sent an email to Schoolcraft, the St. Charles County Prosecuting Attorney, and the Mayor of the City of Wentzville regarding Detective Rosner's handling of her sexual assault investigation. (Docket No. 8 at 11-12). Attached to the email was the complaint she had filed. (Docket No. 8 at 11). In the email, plaintiff documented her concerns about Detective Rosner's handling of the investigation. (Docket No. 8 at 12). Despite this, plaintiff alleges that no internal investigation was commenced, and no action taken by Sergeant Schoolcraft, the Prosecuting Attorney, or the Mayor. Plaintiff further claims the "botched investigation" was the result of an unconstitutional policy, custom, and failure to train on the part of the City of Wentzville. Specifically, plaintiff states that the City of Wentzville failed to train its police officers to properly investigate rape claims and appropriately treat rape victims. Plaintiff asserts that the City of Wentzville also failed to address the culture of misogyny and sexism within the police department.

Based on the foregoing facts, plaintiff presents three separate counts in her amended complaint. Count I is a 42 U.S.C. § 1983 claim against Detective Rosner and the City of Wentzville, alleging a violation of the Fourth Amendment's right to privacy. (Docket No. 8 at 15). Count II is a § 1983 claim against all defendants, alleging a violation of plaintiff's due process

right of access to the courts. (Docket No. 8 at 18). Finally, Count III is a § 1983 claim against the City of Wentzville, asserting an unconstitutional failure to train. (Docket No. 8 at 20).

Plaintiff is seeking compensatory and punitive damages, as well as attorneys' fees. (Docket No. 8 at 23).

## Discussion

Plaintiff has filed an amended complaint asserting 42 U.S.C. § 1983 claims against the City of Wentzville, Detective Rosner, and Chief Frisz. The Court notes that plaintiff's amended complaint completely replaces her original complaint as the operative pleading. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect"). Because plaintiff was granted leave to proceed in forma pauperis, the Court reviewed her amended complaint pursuant to 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will direct the Clerk of Court to issue process on all defendants.

### A. Count I

In Count I, plaintiff asserts a claim under 42 U.S.C. § 1983 against Detective Rosner and the City of Wentzville, accusing both of violating her right to privacy under the Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The primary purpose of the Fourth Amendment is to "safeguard the privacy and security of individuals against arbitrary invasions" by government officials. *Hunter v. Auger*, 672 F.2d 668, 673 (8th Cir. 1982). When an individual "seeks to preserve something as private," and his or her expectation of privacy is "one that society is prepared to recognize as reasonable…official

intrusion into that private sphere generally qualifies as a search." *Carpenter v. United States*, 138 S.Ct. 2206, 2213 (2018). The ability of a person to claim the Fourth Amendment's protections depends upon whether he or she has a legitimate expectation of privacy in the invaded place. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). A person is still protected by the Fourth Amendment even when not suspected of criminal behavior. *See Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 530 (1967) ("It is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior").

With regard to Detective Rosner, plaintiff alleges that Rosner's recording of her SANE exam without her consent constituted an unreasonable search in violation of the Fourth Amendment. In support, plaintiff asserts that her examination took place in a private hospital room and was of an extremely sensitive nature, including questions about her sexual history and photographs of her body. She further claims that Detective Rosner was present for this investigation, and surreptitiously recorded it with a digital audio recorder, later putting that information onto a DVD. Plaintiff states that she did not know that Detective Rosner was recording the SANE exam, and did not consent to it. Aside from putting the recording onto a DVD, plaintiff alleges that Detective Rosner allegedly shared that information with Johnson, the man she accuses of sexually assaulting her. The Court must accept these allegations as true. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019) (stating that a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the plaintiff). As such, plaintiff's allegations against Detective Rosner in Count I are sufficient for purposes of initial review under 28 U.S.C. § 1915.

As to the City of Wentzville, plaintiff states there is a custom of misusing law enforcement resources to violate the privacy rights of their targets. To prove a custom, a plaintiff must show that there was a continuing, widespread, persistent pattern of unconstitutional misconduct to which policymaking officials were deliberately indifferent or tacitly authorized. *See Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). Here, plaintiff alleges that City of Wentzville employees sexually harassed and illegally investigated a former female Chief of Police, demonstrating a culture of misogyny and sexism. Further, plaintiff asserts that this unofficial custom was the moving force behind the violation of her Fourth Amendment rights. The Court must accept these allegations as true. *See Jones*, 915 F.3d at 499 (8th Cir. 2019) (stating that a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the plaintiff). As such, plaintiff's allegations against the City of Wentzville in Count I are sufficient for purposes of initial review under 28 U.S.C. § 1915.

## B. Count II

In Count II, plaintiff asserts a claim under 42 U.S.C. § 1983, alleging that all three defendants violated her due process right of access to the courts. The right of access to the courts is well-established and guaranteed by the constitution. *See Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826, 830 (8th Cir. 2005). "The right applies not only to the actual denial of access to the courts, but also to situations in which the plaintiff has been denied meaningful access by some impediment put up by the defendant." *Id*.

Plaintiff asserts that she had a viable civil cause of action against Johnson for assault, as well as against the instant defendants. With regard to Detective Rosner, plaintiff alleges that Rosner's threat to arrest her intimidated her from filing a complaint against Johnson. She also states that Detective Rosner's mishandling of her investigation, his failure to forward the case to

the Prosecuting Attorney, and his misclassification of her case restricted her access to the courts. As to Chief Frisz, plaintiff states that she complained to Frisz about Detective Rosner's conduct. However, Chief Frisz claimed she had no recourse, which also allegedly violated her right of access to the courts. Finally, as to the City of Wentzville, plaintiff claims that Wentzville's unconstitutional custom was the moving force behind plaintiff being denied access to the courts. In support, plaintiff alleges that the unlawful investigation and harassment of a former police chief put the City of Wentzville on notice of widespread constitutional misconduct, but that officials acted with deliberate indifference by failing to take remedial measures. As noted above, the Court must accept these allegations as true. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019) (stating that a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the plaintiff). Therefore, plaintiff's allegations against all three defendants in Count II are sufficient for purposes of 28 U.S.C. § 1915 review.

### C. Count III

In Count III, plaintiff asserts a claim under 42 U.S.C. § 1983, alleging that the City of Wentzville failed to train its employees. A plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005).

Here, plaintiff contends that the City of Wentzville failed to adequately train its employees to prevent gender bias and to properly deal with victims of sexual assault. Because of these failures,

plaintiff states that she was assaulted a second time, violating her right to bodily integrity. She further states that the City of Wentzville was "aware of the culture of misogyny and bigotry" that existed in the police department. In support of this contention, plaintiff alleges that she gave notice to the City of Wentzville by filing a complaint against Detective Rosner with Sergeant Schoolcraft, the Prosecuting Attorney, and the Mayor. The Court must accept these allegations as true. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019) (stating that a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the plaintiff). As such, plaintiff's allegations against the City of Wentzville in Count III are sufficient for purposes of 28 U.S.C. § 1915 review.

### D. Statute of Limitations

In its order to amend, the Court noted that it appeared that plaintiff's claims might be time-barred under the applicable statute of limitations. *See Walker*, 650 F.3d at 1205 (explaining "that § 1983 claims accruing within a particular state should be governed by that state's statute of limitations governing personal-injury claims"); and *Sulik*, 393 F.3d at 767 (noting that for cases arising in Missouri, the five-year statute of limitations for personal injury actions found in RSMo § 516.120(4) applies to § 1983 actions). While the statute of limitations is an affirmative defense, a district court may properly dismiss an in forma pauperis complaint under 28 U.S.C. § 1915 when it is apparent the statute of limitations has expired. *Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir. 1992).

Here, plaintiff has presented allegations indicating that defendants affirmatively acted in such a way as to delay the bringing of this action. For instance, she has accused Detective Rosner of concealing his investigation's inadequacies by improperly clearing her case and by not forwarding the case to the Prosecuting Attorney. As such, plaintiff contends that defendants are

estopped from using the statute of limitations as an affirmative defense. Accepting the factual allegations as true, it is not apparent on initial review that this case should be dismissed as untimely.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk of Court shall issue process or cause process to issue on Sean Rosner and the City of Wentzville as to Count I, on Sean Rosner, Kurt Frisz, and the City of Wentzville as to Count II, and on the City of Wentzville as to Count III of plaintiff's amended complaint.

Dated this 8th day of July, 2021.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE