UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| REGINA LYNN BRAND, | ) |
| Plaintiff(s), | ) |
| v. | ) Case No. 4:20-cv-01758-SRC |
| CITY OF WENTZVILLE, et al., | ) |
| Defendant(s). | ) |

## Memorandum and Order

On December 10, 2020, Regina Brand sued the City of Wentzville, the city's Chief of Police Kurt Frisz, and Detective Sean Rosner, alleging that their investigation—or lack thereof—of an alleged sexual assault deprived Brand of her constitutional rights.  After Chivas Johnson allegedly raped Brand on August 15, 2015, Brand claims to have endured shocking behavior on the part of the authorities.  She alleges that Detective Rosner took unlawful actions against her while failing to adequately investigate the circumstances of the assault or forward the case to the county prosecutor.  And then, when Brand turned to Chief Frisz and the City of Wentzville, she claims they too failed to address her complaints.  Critically however, no dispute exists that all but one of the alleged deprivations occurred more than five years before Brand filed suit, meaning that the statute of limitations prevents the Court from considering those claims.  And the one claim that the statute of limitations may not bar, the access-to-courts claim against Chief Frisz, fails to state a claim.

I.  **Background**

   A.  **Procedural history**

On December 10, 2020, Brand filed this lawsuit on the Court's form "Complaint for a Civil Case" and without a lawyer. Doc. 1. The original complaint named the Wentzville Police Department, Chief Kurt Frisz, Detective Sean Rosner, Sergeant David Schoolcraft, and Detective Craig Schulte as defendants. *Id.* On review of the complaint, *see* 28 U.S.C. § 1915, the Court granted Brand's motion for leave to proceed in forma pauperis, dismissed her complaint without prejudice with leave to amend, and appointed limited-scope counsel for the purpose of assisting Brand in drafting an amended complaint. Docs. 4, 6. At that time, the Court specifically noted that "Plaintiff's case appears time-barred." Doc. 4 at p. 6.

With the assistance of court-appointed counsel, Brand filed her amended complaint which levied three section 1983 claims against Detective Rosner, Chief Frisz, and the City of Wentzville. Doc. 8. Count 1 of the amended complaint alleges that Defendants Rosner and City of Wentzville violated Brand's Fourth Amendment rights when Rosner recorded the August 18, 2015, sexual-assault forensic examination. Doc. 8 at ¶¶ 115–34. Count 2 alleges that all Defendants violated Brand's due process right of access to courts, *id.* at ¶¶ 135–47, and count 3 alleges that the City of Wentzville failed to train its police officers to prevent gender bias which, Brand argues, resulted in Johnson sexually assaulting Brand a second time, *id.* at ¶¶ 148–54.

The Defendants moved to dismiss Brand's claims on various grounds, including that the statute of limitations bars Brand's claims, and the Court held a hearing on the motions. Docs. 20, 32, 38. During the hearing, Brand argued that she was unable to file her suit within the five years because of her medical issues. Doc. 44 at p. 19. At the Court's request, Brand then submitted medical records and police reports. Docs. 40, 41. Because the Court intended to

2

consider those materials, the Court converted the City of Wentzville and Chief Frisz's motion and partially converted Detective Rosner's motion, to the extent he sought dismissal based on the statute-of-limitations, to motions for summary judgment. Doc. 42 (citing Fed. R. Civ. P. 12(d)). The Court gave notice of the conversion to the parties, permitted additional briefing, and requested that the parties address whether a mental-incapacitation tolling statute affected the case in any way. Doc. 42 (citing Mo. Rev. Stat. § 516.170). The Court finds that, at the hearing and throughout this litigation, Brand articulated her positions well and capably represented herself.

## B. Facts undisputed for purposes of summary judgment

Only for the purposes of the motions for summary judgment, the parties do not dispute the following facts as alleged in Brand's complaint. Except as otherwise noted, the Court finds the following facts as undisputed only for the purpose of resolving the statute-of-limitations defenses raised in the motions for summary judgment. *See* Fed. R. Civ. P. 56(a) ("The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

Brand alleges that a man named Chivas Johnson raped her on August 18, 2015. Doc. 8 at ¶ 2. After Brand called 9-1-1, police arrested Johnson, *id.* at ¶¶ 11, 14, and Detective Rosner interviewed Brand, *id.* at ¶¶ 16–17. That same day, Detective Rosner took Brand to a hospital where a nurse conducted a sexual-assault forensic examination. *Id.* at ¶¶ 19–21, 24; Doc. 44 at p. 23:1–3. Detective Rosner remained in the room and audio-recorded the exam. Doc. 8 at ¶¶ 21, 25–42. Although Brand alleged in her complaint that Detective Rosner "record[ed] Brand without her knowledge," *id.* at ¶ 28, Brand acknowledged at a hearing and under oath that she "knew the detective recorded the exam because [she] saw the recorder in the room . . . And [she] asked him about it," Doc. 44 at p. 22:13–21. She further confirmed that she was "aware that

[Rosner] was recording [the exam] right then and there on the spot." *Id.* at p. 22:22–25. The next day, Brand obtained an order of protection against Johnson. Doc. 8 at ¶ 44.

Detective Rosner eventually concluded that "he could find 'no probable cause to charge Johnson with rape or any crimes,'" and stated that "no semen was located at the scene or on Brand's body or clothing," despite not yet having received the results of the sexual-assault forensic examination. Doc. 8 at ¶¶ 45–47; Doc. 40 at pp. 5–6. Detective Rosner also indicated that "the case would be 'forwarded to the St. Charles County Prosecuting Attorney's Office for further review,'" even though "the case was never forwarded to the prosecuting attorney." Doc. 8 at ¶ 48; Doc. 40 at p. 6. After receiving the results of the sexual-assault forensic examination, Detective Rosner supplemented his report and stated that the "evidence only shows that Brand and Johnson engaged in intercourse and is not to be considered evidence of rape." Doc. 8 at ¶ 50; Doc. 40 at p. 29.

After Detective Rosner completed his investigation, Brand claims that Johnson called her and taunted her about "being let go." Doc. 8 at ¶ 52. Brand called Detective Rosner to complain, but Detective Rosner responded by claiming Brand lied and threatening her with arrest for violating a restraining order "if she had any contact with Johnson." *Id.* at ¶¶ 55–56. Fearful of Detective Rosner's threat, Brand dropped her order of protection against Johnson. *Id.* at ¶ 57.

On November 12, 2015, Johnson again assaulted Brand, this time in Wellston, Missouri. *Id.* at ¶ 58. Brand claims that Wellston police initially investigated this second assault but dropped the investigation once "Johnson showed them the results of the first investigation." *Id.* at ¶ 59.

On November 16, 2015, "Brand picked up the police report regarding the initial sexual assault that took place [on] August 18, 2015, from the Wentzville Police Department." *Id.* at ¶

4

62. She claims that the police report "indicated the case was 'Exceptionally Cleared,'" *id.* at ¶ 63, and that police departments only "exceptionally clear" cases "when there *is probable cause* to arrest and charge Johnson, but there is some extraneous reason that law enforcement cannot do so," *id.* at ¶ 66. After reading Rosner's report, Brand became upset with Rosner and the City of Wentzville's handling of the investigation, so, while still at the police department, she filed a complaint. *Id.* at ¶¶ 71–72. That same day, Brand went to the St. Charles County Prosecutor's office and asked about the status of the case, "[h]owever, the Prosecuting Attorney's office stated to Brand it had never received the report or any information regarding the case despite Defendant Rosner's statement in the police report." *Id.* at ¶¶ 74–76.

On November 17, 2015, Brand sent an email to police department officials, as well as the St. Charles County Prosecutor and the Mayor of Wentzville. *Id.* at ¶¶ 87–89; Doc. 48-5. Brand alleges that none of the people to whom she complained took any action regarding her complaints. Doc. 8 at ¶ 92. Finally, Brand includes additional allegations from a lawsuit involving a former chief of the Wentzville police department that she contends "demonstrate a continuing widespread, persistent pattern of unconstitutional conduct." *Id.* at ¶¶ 93–113.

**II.    Standard**

Because Brand presented the Court with matters outside the pleadings at the Court's request, the Court—with due notice to the parties and to the extent noted in the Court's order, Doc. 42—treats the Defendants' motions to dismiss as motions for summary judgment as provided for in Rule 56. *McAuley v. Federal Ins. Co.*, 500 F.3d 784, 787 (8th Cir. 2007); Fed. R. Civ. P. 12(d). Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for

5

summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the initial burden of showing both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(a).

### III. Analysis

The Court first addresses the statute of limitations and concludes that Missouri's five-year statute of limitations governing personal-injury claims bars all but one of Brand's claims. The Court also determines that equitable estoppel does not prevent the Defendants from pleading a statute-of-limitations defense, nor can Brand benefit from Missouri's fraudulent-concealment and mental-incapacitation tolling statutes. Finally, the Court concludes that Brand's access-to-courts claim against Chief Frisz fails to state a claim upon which relief can be granted and dismisses the whole of Brand's complaint with prejudice.

### A. The statute of limitations bars all but one of Brand's claims

#### 1. A five-year statute of limitations governs Brand's claims

Brand brings each of her three claims under 42 U.S.C. § 1983. While section 1983 does not contain its own statute of limitations, section "1983 claims accruing within a particular state should be governed by that state's statute of limitations governing personal-injury claims." *Walker v. Barrett*, 650 F.3d 1198, 1205 (8th Cir. 2011). In Missouri, a plaintiff has five years within which to bring a personal-injury claim. Mo. Rev. Stat. § 516.120(4) (An action must be brought within five years "for any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated."). Here, all of the facts alleged by Brand took

place in Missouri, and Brand brings each claim under § 1983.  Thus, a five-year statute of limitations governs Brand's three claims.  *See Sulik v. Taney Cty., Mo.*, 393 F.3d 765, 767 (8th Cir. 2005) ("Missouri's five-year statute of limitations for personal injury actions, Mo. Rev. Stat. § 516.120(4) (2000), applies to all of Sulik's section 1983 claims." (citations omitted)).

Though state law governs the limitations period, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  Under federal law, such a claim accrues when the plaintiff has "a complete and present cause of action." *Id.* (citing *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)) (internal quotations omitted). The cause of action arises "when the wrongful act or omission results in damages," despite the fact that the plaintiff may not know or be able to predict the full extent of the injury.  *Id.* at 391; *see also Rassier v. Sanner*, 996 F.3d 832, 837–38 (8th Cir. 2021) (holding that the statute of limitations begins to run once the alleged tortious act results in damages, not when the plaintiff believes that he has sufficient evidence to obtain relief).

### 2. The right-of-privacy claim accrued on August 18, 2015, when the search occurred.

In count 1, Brand claims that Detective Rosner and the City of Wentzville violated her Fourth Amendment right of privacy when Detective Rosner audio-recorded Brand's sexual-assault forensic examination.  Despite Brand's allegation in her complaint that Rosner "recorded Brand's examination without her knowledge," Doc. 8 at ¶¶ 28, 128, Brand admitted to the Court under oath that, on the day of the examination, she "saw the recorder . . . in the exam room.  And . . . asked him about it," Doc. 44 at p. 22:19–22.  Brand's testimony removes any genuine dispute whether Brand knew of the alleged search at the time it occurred:

7

>**The Court:** And then with respect to the recording of the exam by Detective Rosner, that is reflected in the police report; is that right?
>
>**Ms. Brand:** Well, the first police report they gave me, it wasn't in the first police report where it said "exceptionally cleared" on it. It wasn't until after I complained about that police report that they doctored it up and tried to clean up what they were doing over there. So I don't think that was in the report that I picked up on - - in November.
>
>**The Court:** So when do you think you first learned of the recording?
>
>**Ms. Brand:** Let me see if it's in this complaint.
>
>**The Court:** And not - - and when I say learned of the recording, not learned that there was a CD of it, but learned that the detective had recorded the exam at the hospital.
>
>**Ms. Brand:** I knew the detective - - I knew the detective recorded the exam because I saw the recorder in the room, in the - - in the exam room. And I asked him about it.
>
>**The Court:** I see. Okay. So that day that it happened, you asked the detective and you were aware that he was recording it right then and there on the spot?
>
>**Ms. Brand:** Yes, sir.
>
>**The Court:** And so was that exam the same day as the first assault took place, the August 18 of 2015?
>
>**Ms. Brand:** Yes.

Doc. 44 at pp. 22:3–23:3. Because the parties do not dispute—for purposes of the motions—the fact that Brand knew of the search as it happened, the Court finds that the statute of limitations began to run when the alleged violation occurred. *See Hall v. Elrod*, 399 Fed. App'x 136, 137 (8th Cir. 2010) (holding that a Fourth-Amendment claim accrues when search occurs (citing *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) and *Johnson v. Johnson Cty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991)). Because the alleged search took place on August 18, 2015, and Brand did not commence this action until

8

December 10, 2020, more than five years after the date of the search, the statute of limitations bars count 1.

### 3. All but one of the right-of-access-to-the-courts claims accrued no later than November 16, 2015, when Brand received the police report.

In count 2, Brand claims that Detective Rosner, Chief Frisz, and the City of Wentzville violated her right of access to the courts when: (1) they "failed to adequately investigate" Johnson, Doc. 8 at ¶ 139; (2) Detective Rosner threatened to arrest "Brand if she were to contact Johnson again," *id.* at ¶ 140; (3) Detective Rosner mishandled the investigation, failed to forward the case to the prosecutor, and misclassified the case as exceptionally cleared, *id.* at ¶ 141; (4) Chief Frisz told Brand that she had no recourse when she complained about Detective Rosner's conduct, *id.* at ¶ 142; and (5) Detective Rosner acted "[p]ursuant to the City of Wentzville's custom of deliberate indifference to an individual's right of access to the courts," *id.* at ¶145.

After Brand received the police report on November 16, 2015, she knew of Detective Rosner's alleged failure to adequately investigate Johnson, his alleged mishandling of the investigation and misclassification of the case, along with his failure to forward the case to the prosecutor. Doc. 8 at ¶¶ 62–79. Brand also knew of Detective Rosner's threat at some point before Johnson assaulted her a second time on November 12, 2015. Doc. 8 at ¶¶ 56, 58. And finally, Brand's municipal-liability claim regarding Wentzville's alleged custom of deliberate indifference to an individual's right of access—insofar as it derives from Detective Rosner's conduct—accrued no later than November 16, 2015. *See Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007) ("[I]n order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." (quoting *McCoy v. City of Monticello,* 411 F.3d 920, 922 (8th Cir. 2005))).

9

For purposes of the motions, the parties do not dispute and the Court finds that Brand knew or should have known of each of the actions that allegedly injured her right of access to the courts—except for Chief Frisz's alleged statement that she had no recourse—no later than November 16, 2015.  Because Brand did not commence this action until December 10, 2020, more than five years later, the statute of limitations bars count 2, except as to the allegations against Chief Frisz.  But, for the reasons discussed in Section III.C, the allegations against Chief Frisz fail to state a claim.

        4.        **The failure-to-train claim accrued on November 12, 2015, the date of the second alleged assault**

In count 3, Brand claims the City of Wentzville "failed to adequately train its employees to prevent gender bias," which "direct[ly] result[ed]" in Johnson assaulting Brand a second time, on November 12, 2015.  Doc. 8 at ¶¶ 149, 151, 153; *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  Brand alleges that Johnson assaulted her for the second time on November 12, 2015.  Doc. 44 at p. 23:4–7.  Brand does not allege any other harm resulting from the city's alleged failure to train its employees.

Assuming without deciding that Brand states a *Monell* claim, any § 1983 claim accrues when a plaintiff has a complete and present cause of action—the moment when the act or omission causes damages.  *Wallace*, 549 U.S. at 388, 391.  For purposes of adjudicating the statute-of-limitations issues, the Court finds no genuine dispute of material fact exists that the alleged second assault took place on November 12, 2015.  Because Brand knew or should have known that she had a complete and present cause of action when the alleged second assault took place on November 12, 2015, but did not commence this action until December 10, 2020, more than five years after the date of the assault, the statute of limitations bars count 3.

10

### B. Equitable estoppel and Missouri's tolling statutes do not apply

#### 1. Equitable estoppel

Tacitly admitting her statute-of-limitations problem, Brand argues that equitable estoppel prevents the Defendants from pleading a statute-of-limitations defense. Doc. 8 at pp. 21–22. Brand asserts that Frisz and Rosner "made positive efforts to delay the bringing of a lawsuit." Doc. 8 at ¶ 156. She claims that Rosner induced her to delay bringing an action by concealing the inadequacies of the investigation and failing to forward the case to the Prosecuting Attorney, *id.* at ¶ 158, and she further claims that Rosner threatened "her with arrest after she had shared with him that she was upset he let Johnson go after the first assault," although this only intimidated her until Johnson assaulted her a second time, *id.* at ¶¶ 140, 159. Brand also alleges that Frisz failed to investigate Rosner's conduct and falsely informed Brand that she had no recourse to address her complaints. Finally, Brand also says that she relied on administrative channels—like a complaint made to the mayor—to address her complaints, but because these complaints failed to lead to any further action she "wasted valuable time in which she could have filed a civil suit." Doc. 8 at ¶ 169.

When adjudicating § 1983 claims, the Court "generally refer[s] to state law for tolling rules, just as [it does] for the length of statutes of limitations." *Wallace*, 549 U.S. at 394; *see Montin v. Johnson*, 636 F.3d 409, 413 (8th Cir. 2011); *see also Ashokkumar v. Elbaum*, 932 F. Supp. 2d 996, 1016 (D. Neb. 2013) ("[E]quitable estoppel is a tolling doctrine that, unlike accrual, is determined by reference to state law." (citing *Wallace*, 549 U.S. at 393–94; *Montin*, 636 F.3d at 413)).

In Missouri, "[t]o apply the doctrine of equitable estoppel to bar a defendant's statute of limitations defense, the defendant must have acted affirmatively to induce the plaintiff to delay

11

bringing the action." *State ex rel. Beisly v. Perigo*, 469 S.W.3d 434, 441 (Mo. 2015). Estoppel "forecloses the wrongdoer, who concealed his or her actions fraudulently, from asserting the defense." *Id.* at 444. As the Eighth Circuit put it, "*Beisly*, at most, permits a plaintiff to invoke equitable estoppel if a defendant's own acts of fraud caused the plaintiff's untimeliness." *Halbrook v. Mallinckrodt, LLC*, 888 F.3d 971, 976 (8th Cir. 2018); *see M & D Enterprises, Inc. v. Wolff,* 923 S.W.2d 389, 400 (Mo. Ct. App. 1996) ("[A] defendant may be estopped by his conduct from claiming the statute of limitations as a defense where his conduct induced the plaintiff to delay bringing the suit until after the expiration of the statute."). Moreover, "[t]he doctrine of equitable estoppel is rarely applied in cases involving a governmental entity, and then only to avoid manifest injustice." *Lynn v. Dir. of Revenue*, 689 S.W.2d 45, 48 (Mo. 1985).

Brand's estoppel argument lacks merit. Brand fails to allege that Defendants' conduct induced her "to delay bringing the suit until after the expiration of the statute [of limitations]." *Wolff*, 923 S.W.2d at 400. That is, Brand does not allege that Defendants' "own acts of fraud caused [her] untimeliness," *Halbrook*, 888 F.3d at 976, and the Court does not see how she could. Brand personally experienced all of the events that she says justify estoppel and knew of them as they happened or within weeks thereafter—quite the opposite of a wrongdoer concealing his actions. *Beisly*, 469 S.W.3d at 444; *see Investors Title Co. v. Chicago Title Ins. Co.*, 983 S.W.2d 533, 537 (Mo. Ct. App. 1998) ("These facts must be known to the party estopped and unknown to the other party."). Given that no dispute of fact exists for purposes of this motion that, well within the limitations period, Brand knew the information relevant to bringing a claim, the Court concludes that equitable estoppel does not prevent Defendants from pleading the statute of limitations and that this conclusion will not work a "manifest injustice." *Lynn*, 689 S.W.2d at 48.

### 2. Missouri fraudulent-concealment tolling statute

While Brand only specifically sought application of the equitable estoppel doctrine to defeat the statute of limitations, the Court considers the related, but distinct, fraudulent-concealment statute. Missouri law provides that "[i]f any person, by absconding or concealing himself, or by any other improper act, prevent [sic] the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented." Mo. Rev. Stat. § 516.280. However, section 516.280 "is inapplicable if a plaintiff knows or should have known he had a cause of action." *State ex rel. Heart of Am. Council v. McKenzie*, 484 S.W.3d 320, 325 (Mo. 2016) (quoting *Wolff*, 923 S.W.2d at 400). Thus, section 516.170 does not excuse Brand's failure to file her lawsuit within the statute of limitations because, as previously discussed in sections III-B, III-C, and III-D, no dispute of fact exists—for purposes of the motions—that Brand knew or should have known she had a cause of action.

### 3. Missouri mental-incapacity tolling statute

During the hearing on the motions to dismiss, Brand argued that she was unable to file her lawsuit within five years because of her medical issues. She told the Court that she "sustained a head injury" on November 12, 2015, and suffered various neurological symptoms thereafter. Doc. 44 at pp. 18:13–19:17. After the hearing and at the Court's request, Brand submitted her "disability paperwork" to the Court. Doc. 44 at p. 18:16; Doc. 41. The Court notified the parties that it intended to consider the medical records, and thus converted the City of Wentzville and Chief Frisz's motion and partially converted Detective Rosner's motion to motions for summary judgment. Doc. 42; Fed. R. Civ. P. 12(d).

13

Even though Brand did not specifically invoke state law to medically excuse her untimely filing, the Court requested briefing from the parties regarding the applicability of Mo. Rev. Stat. § 516.170, which reads:

> Except as provided in section 516.105, if any person entitled to bring an action in sections 516.100 to 516.370 specified, at the time the cause of action accrued be either within the age of twenty-one years, or mentally incapacitated, such person shall be at liberty to bring such actions within the respective times in sections 516.100 to 516.370 limited after such disability is removed.

Interpreting this statute, Missouri courts hold that "a plaintiff who seeks to toll a limitations period due to mental incapacity must set forth facts which show that plaintiff was deprived of an ability to reason or was unable to understand and act with discretion in the ordinary affairs of life, which disability prevented plaintiff from bringing suit." *Kellog v. Kellog*, 989 S.W.2d 681, 685 (Mo. Ct. App. 1999) (concluding that substitution of "mentally incapacitated" for "insane" did not substantively change the statute).

Brand submitted a U.S. Department of Labor "Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act)" and an Aetna "Disability Attending Physician's Statement." Docs. 40, 41. In August 2016, Brand's doctor noted that due to her medical condition, Brand had been incapacitated for a single continuous period of time since November 12, 2015, because she "cannot focus, process or verify sensitive documents w/ head [and] vision issues." Doc. 41 at p. 2. Because Brand "can't drive, blacking/passing out – vision," the doctor recommend that Brand only work 2 hours per day, 3 days per week. *Id.* at p. 3. In December 2016, her doctor stated on an "Aetna Disability Attending Physician's Statement" that she cannot drive and should not work. *Id.* at p. 6.

Defendants point out that on November 16, 2015, just days after her injury, Brand filed for an order of protection against Chivas Johnson in St. Charles County Circuit Court, *Brand v.*

14

*Johnson*, No. 1511-PN01755 (St. Charles Cnty. Cir. Ct. Nov. 16, 2015), complained in person at both the Wentzville Police Department and the St. Charles County Prosecutor's office, Doc. 8 at ¶¶ 71–76, and sent a lengthy email to the Mayor of Wentzville and the St. Charles County Prosecutor on November 17, 2015, Doc. 48-5.

Brand's medical records do not create a genuine dispute of material fact regarding her capacity. The records indicate that she could work a limited schedule, and just days after her injury she filed a lawsuit against Johnson and cogently made her complaints known to various Wentzville and St. Charles County officials—simply not the behavior of a person deprived of reason or an ability to understand. *See Kellog*, 989 S.W.2d at 686 (finding no genuine dispute of material fact that plaintiff was not mentally incapacitated when he rarely left his room, could not concentrate, and contended that he could not consider his legal rights because doing so reminded him of the trauma of the underlying claim). Accordingly, no genuine dispute exists that Brand was not "mentally incapacitated" within the meaning of Mo. Rev. Stat. § 516.170. Moreover, neither party nor the record suggests that Brand was "within the age of twenty-one years" when any cause of action accrued. Section 516.170 does not extend the time for Brand to file her lawsuit.

### C. Brand fails to state a claim against Chief Frisz

Despite extensive briefing and a hearing, the record does not reveal precisely when Chief Frisz told Brand she "had no recourse," in response to her complaints. Brand claims that this statement violated her right of access to the courts, while Chief Frisz argues that Brand fails to state an access-to-courts claim against him. Doc. 33 at pp. 7–8. Even though the Court previously converted Chief Frisz's motion to dismiss to a motion for summary judgment—done primarily to facilitate resolution of the statute-of-limitations issues—the Court applies the

standards applicable to Rule 12(b)(6) to consider whether Brand states an access-to-courts claim against Chief Frisz. *See, e.g.*, *N. Ark. Med. Ctr. v. Barrett*, 962 F.2d 780, 784 (8th Cir. 1992) (deciding summary judgment motion "solely on the basis of pleadings is the functional equivalent of a dismissal motion"); *Myers v. Moore*, 326 F.R.D. 50, 59 (S.D.N.Y. 2018) (evaluating under the Rule 12(b)(6) standard a summary judgment motion that argued plaintiff failed to state a claim). In applying the motion-to-dismiss standard, the Court considers only the allegations in Brand's complaint. *Barrett*, 962 F.2d at 784.

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." To meet this standard, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff[.]" *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). Threadbare recitals of

16

a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although courts must accept all factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted).

In count 2, Brand asserts a "backward-looking" denial-of-access-to-courts claim against Chief Frisz, which may arise when "official acts claimed to have denied access may allegedly have *caused* the loss or inadequate settlement of a meritorious case, or the loss of an opportunity to seek some particular order of relief." *Christopher v. Harbury*, 536 U.S. 403, 414 (2002) (emphasis added). While the constitutional basis for an access-to-courts claim remains unsettled, *Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826, 830 (8th Cir. 2005) ("While the right to access the courts exists, the Supreme Court and our court have recognized that the constitutional basis for the right is 'unsettled.'" (quoting *Harbury*, 536 U.S. at 415)), "[t]o plead an actual injury sufficient to proceed with her denial of access to courts claim, Plaintiff must allege (1) an arguably meritorious underlying cause of action, for which (2) Defendants' action burdened or denied her access to the courts, resulting in (3) an injury that cannot be remedied through other means." *Cheeks v. Belmar*, No. 18-cv-2091, 2020 WL 5569982, at *19 (E.D. Mo. Sept. 17, 2020); *see Harbury*, 536 U.S. at 415. Thus, among other things, Brand must plausibly allege that Frisz caused her to file her suit outside the statute of limitations.

Brand alleges that Chief Frisz "frustrated [her] potential litigation" and "delayed her bringing this present suit," when "he claimed she had no recourse" upon hearing her complaints about Detective Rosner. Doc. 8 at ¶¶ 142, 146. Brand believes she "was entitled to rely on" Frisz's statement. *Id.* at ¶ 145. Brand also appears to attempt to plead a municipal-liability claim attendant to Frisz's statement against the City of Wentzville. *Id.* However, Brand fails to allege

17

or explain how Frisz's alleged statement that she "had no recourse" caused her to delay bringing this lawsuit.

Without more, these allegations simply do not "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp.*, 911 F.3d at 512 (quoting *Iqbal*, 556 U.S. at 678). Even assuming that Frisz's statement referenced the possibility of Brand bringing a lawsuit and not a mere unwillingness to act on Brand's complaints, Brand offers no allegations explaining how Frisz's statement caused her to delay bringing this suit after the five-year statute of limitations had passed. *See Gardner v. Luzerne Cty.*, 645 F. Supp. 2d 325, 342 (M.D. Pa. 2009) ("[A]ny causal relationship . . . is too attenuated to support a claim for relief based upon an alleged violation of the right to access the courts.")

Thus, Brand fails to state an access-to-courts claim against Chief Frisz, and the Court dismisses count 2 against Chief Frisz for that reason. Further, to the extent Brand seeks to hold the City of Wentzville liable for Frisz's statement on a municipal-liability theory, the Court dismisses that claim as well. *See Brockinton*, 503 F.3d at 674 ("[I]n order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." (quoting *McCoy*, 411 F.3d at 922)).

        **D.**        **Motion for Appointment of Counsel**

After Brand responded to the motions to dismiss, she moved for the appointment of counsel. Doc. 35. She claims she cannot pay a reasonable attorney fee, that she has made diligent efforts to obtain counsel, and that migraines and issues with her spine prevent her from effectively litigating her case. *Id*. In support of this final point, Brand attached several pages of medical records. Doc. 35-1.

18

Whether to appoint counsel for an indigent plaintiff in a civil case lies within the discretion of the Court, *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006), because no constitutional or statutory right to counsel in civil cases exists, *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984). The standard for appointment of counsel in a civil case is whether both the plaintiff and the Court would benefit from the assistance of counsel. *Edgington v. Mo. Dep't of Corr.*, 52 F.3d 777, 780 (8th Cir. 1995), *abrogated on other grounds by Doe v. Cassel*, 403 F.3d 986, 989 (8th Cir. 2005). This determination involves the consideration of several relevant criteria, including "the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments." *Phillips*, 437 F.3d at 794 (citing *Edgington*, 52 F.3d at 780).

This case, and particularly the motions considered in this order, involve relatively straightforward questions of law, and as discussed, Brand quite ably investigated the facts of the case. The Court found that it and Brand would benefit from appointment of counsel for the preparation of an amended complaint. *See* Doc. 6 (appointing limited-scope counsel). However, Brand has cogently responded to the Defendants motions and ably argued her position at the hearing the Court held on the motions to dismiss. The Court also notes that Brand's medical records indicate that a doctor cleared her for work "without restrictions," effective October 25, 2021. Doc. 35-1 at p. 8. In sum, despite alleged difficulty, Brand has effectively litigated this case. The Court concludes that it should not appoint counsel because neither Brand nor the Court would benefit.

## IV. Conclusion

The Court grants the Defendants' [20] [32] motions to dismiss converted to motions for summary judgment. The Court dismisses with prejudice count 2 against Chief Frisz and any attendant municipal-liability claim for failure to state a claim. Because the statute of limitations bars each of Brand's other claims, the Court dismisses the remaining claims with prejudice, and denies Brand's [35] motion to appoint counsel. A separate judgment accompanies this order.

So Ordered this 28th day of February 2022.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE